UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELIZABETH AVILES-WYNKOOP,

    Plaintiff,

    v.

KEIA NEAL et al.,

    Defendants.

Civil Action No. 13-1240 (JDB)

## MEMORANDUM OPINION

Plaintiff, an employee at the Department of Housing and Urban Development ("HUD"), seeks a temporary restraining order ("TRO") and a preliminary injunction against her supervisors at HUD. Originally, plaintiff filed a pro se complaint, a request for a temporary restraining order, and a request for a preliminary injunction in D.C. Superior Court on August 6, 2013. The Chief of the Civil Division, Office of the United States Attorney for the District of Columbia, filed a Westfall certification under 28 U.S.C. § 2769(d), conclusively affirming that the defendants were employees of the government and were acting within the scope of their employment at the time of plaintiff's allegations. As a result, defendants removed the case to this Court pursuant to 28 U.S.C. § 1442(a)(1) & 1446 and 28 U.S.C. § 2679(d)(2). Also as a result of the Westfall certification, and pursuant to 28 U.S.C. § 2679(d)(2), the United States of America will be substituted for defendants as the defendant in this case.

Defendants argue in their response to plaintiff's request for a TRO that this Court lacks subject-matter jurisdiction over plaintiff's claims. Def.'s Opp'n 5-13. Federal courts are courts of limited jurisdiction and it is presumed that "a cause lies outside this limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); see also Gen. Motors

1

Corp. v. Envtl. Prot. Agency, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction"). Accordingly, a federal court has a duty to notice a failure of subject-matter jurisdiction on its own motion at any time during the proceedings. See Potomac Passengers Ass'n v. Chesapeake & O. Ry., 520 F.2d 91 (D.C. Cir. 1975). Defendants argue that the Court lacks subject-matter jurisdiction over plaintiff's claims—against federal employees in their official capacities—because "[t]he doctrine of sovereign immunity insulates the United States from suit except on such exact terms as Congress authorizes." Nichols v. Agency for Int'l Dev., 18 F. Supp. 2d 1, 3 (D.D.C. 1998) (citing Honda v. Clark, 386 U.S. 484, 501 (1967)). "Sovereign immunity is jurisdictional in nature." FDIC v. Meyer, 510 U.S. 471, 475 (1994). Hence, whether the Court has subject-matter jurisdiction depends on the nature of plaintiff's claims.

### 1. Plaintiff has asserted tort claims and an employment discrimination claim

Because of the sparse nature of plaintiff's complaint and request for a TRO, it is difficult to discern the exact nature of the claims that she is asserting. But pro se complaints are to be "liberally construed." See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Construing her complaint and request for TRO broadly, plaintiff appears to assert tort claims and an employment discrimination claim. Compl. 1. In her complaint, plaintiff claims that the defendants, her first and second line supervisors at HUD, "verbally admonished [her] in front of other staff members [and] slandered [her] name," which she alleges constitutes a "Hostile/Bullying Work Environment." Id. She also alleges that "[e]veryday [she is] enduring verbal abuse," and that she is "scared that either supervisor will take the Hostile/Bullying Work Environment to the physical." Id. And on the civil cover sheet filed with her complaint, she indicated that the nature

of the suit was "Harassment," located under "Personal Torts." These allegations fairly may be construed as claims for defamation and assault.

In her request for a TRO, she alleges that she has filed "30 plus grievances to show that [her] two supervisors are at fault, as well as filed an EEO case, as well as a Workman's Comp case, [and] an OSHA case to protect [her] from bodily harm from both [of her] supervisors." Pl.'s Mot. for TRO ("TRO Mot.") 1. And she alleges that she is "under Doctor's care for [her] anxiety/stress due to [her] hostile/bullying work environment." Id. On the civil cover sheet filed with her request for a TRO, she indicated that the nature of the suit was "Employment Discrimination." Title VII of the Civil Rights Act of 1964 may provide a remedy for harassment claims, including claims premised upon the existence of a hostile work environment. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Although she never specifically mentions Title VII, plaintiff's allegations of a "Hostile/Bullying Work Environment," coupled with her indications that her suit was for "Employment Discrimination" and "Harassment," fairly may be construed as a Title VII hostile work environment claim. Accordingly, the Court will proceed as if plaintiff asserted tort claims and an employment discrimination claim.

2.      **The Court may lack jurisdiction over plaintiff's tort claims**

To the extent plaintiff asserts tort claims against defendants, sovereign immunity may shield the defendants from those claims. "The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." Osborn v. Haley, 549 U.S. 225, 229 (2007); 28 U.S.C. § 2679(b). The individual defendants here are both federal employees. Once the Attorney General—or his authorized designee—certifies that a federal employee was acting within the scope of his or her

employment at the time of the conduct giving rise to the claim, the "employee[s] are dismissed from the action, and the United States is substituted as defendant in place of the employee[s]." Osborn, 549 U.S. at 230. Thereafter, the claims are governed by the Federal Tort Claims Act ("FTCA"). Id. Here, the Chief of the Civil Division, Office of the United States Attorney for the District of Columbia, filed such a certification, affirming that both defendants were employees of the government and were acting within the scope of their employment at the time of the plaintiff's allegations. See Def.'s Opp'n Ex. 2. Thus, plaintiff's tort claims against the individual defendants must be dismissed, the United States will be substituted as the only remaining defendant, see Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 420 (1995), and plaintiff's tort claims will be governed by the FTCA.

The U.S. Attorney's certification that the defendants were acting within the scope of their employment is conclusive only for the purposes of removal, and not substitution: plaintiff may present the Court with her objections to that certification and thereby resubstitute the individual defendants. See id. at 437. It should be noted, however, that the conduct of which she complains appears, at first blush, to be conduct usually undertaken within the scope of employment. She alleges that she was verbally admonished in front of other staff members and that she is enduring verbal abuse from her superiors. Compl. 1. Nevertheless, she may challenge the certification. If she does so successfully, the case will still "aris[e] under" federal law, as that term is used in Article III, and the Court would retain subject-matter jurisdiction as to her common law tort claims against the resubstituted individual defendants, subject to the Court's discretion. See Osborn, 549 U.S. at 244-45; 28 U.S.C. § 1367 ("Supplemental jurisdiction").

If plaintiff does not successfully challenge the U.S. Attorney's certification, her tort claims against the United States must be dismissed because she herself is a federal employee.

4

The Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8101, et seq., precludes civil actions by federal employees seeking tort recovery for injuries sustained during the course of their employment. See id. § 8116(c) (prohibiting "actions against the United States by an "employee, his legal representative, spouse, dependents, next of kin, [or] any other person otherwise entitled to recover damages from the United States . . . because of the [employee's] injury or death."). FECA "was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity." Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 194 (1983). Accordingly, FECA will bar plaintiff's tort claims against the United States if the U.S. Attorney's certification stands.

Consequently, plaintiff will be given an opportunity to challenge the U.S. Attorney's certification that the defendants were acting within the scope of their employment. If she elects not to challenge it, or if she unsuccessfully challenges it, the Court will order that her tort claims be dismissed as barred by FECA.

### 3. The Court lacks jurisdiction over plaintiff's employment discrimination claim

Defendants also argue that, under 42 U.S.C. § 2000e-16(c), the proper defendant is the current HUD Secretary. See Def.'s Opp'n. 14-15. Congress has conditionally waived the sovereign immunity of the United States under § 2000e-16, which extends the protection of Title VII to federal employees. One condition of this waiver is that the "head of the department, agency, or unit, as appropriate, shall be the defendant." Id. § 2000e-16. As another court in this district has noted, "[t]his language means what it says." Nichols v. Agency for Int'l Dev., 18 F. Supp. 2d 1, 3 (D.D.C. 1998). Here, plaintiff has not sued an agency head but instead has sued her two supervisors at HUD. Thus, because Congress has not waived the United States' sovereign

5

immunity in these circumstances, the Court must dismiss plaintiff's employment discrimination claim for lack of subject-matter jurisdiction. See id. at 3. Of course, plaintiff may cure this technical jurisdictional defect by amending her complaint to name the proper defendant.

Another possible basis for finding a waiver of sovereign immunity—and thus jurisdiction—exists: plaintiff seeks exclusively injunctive relief. See Compl. 1; TRO Mot. 1. The Administrative Procedure Act ("APA") operates as a general waiver of the United States' sovereign immunity from suits seeking exclusively injunctive relief. But even had plaintiff invoked the APA, the Court would still lack subject-matter jurisdiction over her employment discrimination claims. This is because the APA "excludes from its waiver of sovereign immunity . . . claims seeking relief expressly or impliedly forbidden by another statute." Transohio Savings Bank v. Director, Office of Thrift Supervision, 967 F.2d 598, 607 (D.C. Cir. 1992); see also 5 U.S.C. § 704. The Supreme Court has held that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." Brown v. General Servs. Admin., 425 U.S. 820, 835 (1976). Because plaintiff is "precluded from bringing suit under other federal anti-discrimination statutes that apply more generally," McKenna v. Weinberger, 729 F.2d 783, 791 (D.C. Cir. 1984), § 2000e-16 forbids injunctive relief except on its own terms. Hence, the APA does not waive sovereign immunity for her employment discrimination claim, and the Court lacks subject-matter jurisdiction over the APA claim.

### 4. Plaintiff has not met the requirements for the issuance of a temporary restraining order

The Court does not necessarily lack subject-matter jurisdiction over plaintiff's tort claims because she has not had an opportunity to challenge the U.S. Attorney's Westfall certification. In addition, plaintiff easily may amend her complaint in an attempt to cure the jurisdictional defect in her employment discrimination claim—even if defendants' looming motion to dismiss on

several other grounds suggests that amendment would be futile. Having cleared the jurisdictional hurdle—for now—the Court will assess plaintiff's request for a TRO. The standard for issuance of the "extraordinary and drastic remedy" of a temporary restraining order or preliminary injunction is by now well-established. Munaf v. Geren, 553 U.S. 674, 689 (2007). To prevail, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) that the moving party would suffer irreparable injury if the injunction were not granted; (3) that an injunction would not substantially injure other interested parties; and (4) that the public interest would be furthered by the injunction. See Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) (citing Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998)); see also Winter v. NRDC, Inc., 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

"If the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." Davis v. Pension Ben. Guaranty Corp., 571 F.3d 1288, 1291-92 (D.C. Cir. 2009) (citing WMATC v. Holiday Tours, 559 F.2d 841, 843 (D.C. Cir. 1977)); see also Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985) ("The test is a flexible one [and] [i]njunctive relief may be granted with either a high likelihood of success and some injury, or vice versa."). The inverse, of course, is true as well—"[i]f the plaintiff makes a particularly weak showing on one factor . . . the other factors may not be enough to compensate." Morgan Stanley DW Inc. v. Rothe, 150 F. Supp. 2d 67, 72 (D.D.C. 2001); see also Hunter v. FERC, 527 F. Supp. 2d 9, 14 (D.D.C. 2007). This approach has been referred to as a "sliding scale." Davis, 571 F.3d at 1291. "'Despite this

flexibility, though, a movant must demonstrate 'at least some injury' for [an] injunction to issue, for 'the basis of injunctive relief in the federal courts has always been irreparable harm.'" Chaplaincy of Full Gospel Churches, 454 F.3d at 297 (quoting CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995), and Sampson v. Murray, 415 U.S. 61, 88 (1974)).

The movant cannot simply make "broad conclusory statements" about the existence of harm. Rather, she must "submit[] . . . competent evidence into the record . . . that would permit the Court to assess whether [s]he, in fact, faces irreparable harm to h[er] professional life if an injunction is not issued." Cornish v. Dudas, 540 F. Supp. 2d 61, 65 (D.D.C. 2008). This is so because the movant has the burden "to make a clear showing that irreparable injury is likely in the absence of an injunction," not just that it is theoretically possible. Dorsey v. District of Columbia, 711 F. Supp. 2d 133, 135 (D.D.C. 2010).

The Court finds that plaintiff has not made that showing here. Plaintiff has not submitted any competent evidence that would permit the Court to assess whether she in fact faces irreparable harm. The allegations in plaintiff's application are conclusory—she alleges that she suffers from anxiety and stress due to an allegedly hostile and bullying work environment, and that she has been verbally reprimanded in front of her coworkers. Compl. 1. In other words, plaintiff has provided no support for her claims that harassment is occurring other than her bare allegations, and thus she has not demonstrated "that irreparable injury is likely in the absence of an injunction." Dorsey, 711 F. Supp. 2d at 135. In addition, in light of the extensive administrative remedies available to plaintiff, the Court would be hard-pressed to conclude that it is <u>likely</u> that plaintiff will face irreparable harm unless the Court issues the injunction.

Moreover, plaintiff has not established that she is likely to succeed on the merits. As the government points out, and as plaintiff implicitly recognizes in her TRO request, she probably has not exhausted her administrative remedies. Def.'s Opp'n 15-16; TRO Mot. 1. (alleging that she has filed "30 plus grievances to show that [her] two supervisors are at fault, as well as filed an EEO case, as well as a Workman's Comp case, [and] an OSHA case to protect [her] from bodily harm from both [of her] supervisors"). Under Title VII, as an employee of the federal government, plaintiff may raise claims of employment discrimination, retaliation, and harassment in federal court only after she has exhausted certain administrative remedies. 42 U.S.C. § 2000e et. seq; 29 C.F.R. § 1614.407. One requirement is that she file a formal administrative complaint. She may not pursue her claims in federal court until the earlier of (1) a final decision on the complaint or (2) 180 days from the filing of the complaint. 42 U.S.C. § 2000e-16(c). Although she filed a formal complaint with the HUD Office of Equal Employment Opportunity in "late May or early June," it was dismissed and her appeal is currently pending before the EEOC. Def.'s Opp'n Ex. 2 (Declaration of Theresa Marshall). Because a final action has not been taken on her complaint, and because 180 days have not passed since she filed the complaint, her claim is not yet ripe for this Court's review. Hence, plaintiff has not demonstrated a "substantial likelihood" of success on the merits.

In this context, where plaintiff's showing on two of the preliminary injunction factors is particularly weak, the other factors are unlikely to compensate. See Morgan Stanley, 150 F. Supp. 2d at 72. It is at least uncertain as to whether defendants would be substantially injured by an injunction. Winter, 555 U.S. at 20. And plaintiff has produced no argument that an injunction is in the public interest. Id. Overall, considering each of the relevant factors, plaintiff has not met the standard for the issuance of a temporary restraining order or preliminary injunction.

Accordingly, plaintiff's requests for a temporary restraining order and preliminary injunction will be denied.

### 5. Plaintiff must respond to defendants' motion to dismiss

Also currently before the Court is defendants' motion to dismiss, filed on August 20, 2013. In Fox v. Strickland, 837 F.2d 507 (D.C. Cir. 1988), the Court of Appeals held that a district court must take pains to advise a pro se party of the consequences of failing to respond to a dispositive motion. "That notice . . . should include an explanation that the failure to respond . . . may result in the district court granting the motion and dismissing the case." Id. at 509. In addition, the Court's local rules state that "[w]ithin 14 days of the date of service or at such other time as the court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion [or] the court may treat the motion as conceded." Local Civil Rule 7(b).

Accordingly, the Court will order that plaintiff respond to the defendants' motion to dismiss by not later than September 17, 2013. If plaintiff does not respond by that date, the Court will treat the motion as conceded and may summarily dismiss the complaint against the moving defendants or enter judgment in their favor. Plaintiff should include in her response any challenge to the U.S. Attorney's certification that the defendants were acting within the scope of their employment. A separate Order will be filed on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: August 27, 2013